UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:21-wi-0003 SEP |
| MICHAEL D. MORHAUS, | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant, Michael D. Morhaus, represented by defense counsel, William S. Margulis and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's use of wire communications, in and affecting interstate commerce, to execute a scheme to cause the transfer of funds from Firm A's bank account to defendant's personal bank

accounts between in or about September 2012 and continuing through in or about August 2019, of which the Government is aware at this time.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis set forth herein is the result of negotiation and led, in part, to the guilty plea. The parties also have agreed to make a joint recommendation for a three-level downward variance at the time of sentencing.

Further, either party may request an additional variance, or departure, above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3. ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. That the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises.
2. That the defendant acted with the intent to defraud.
3. That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in

interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Between September 2012 and August 2019, which is the time period covered by the Information, "Firm A" was an accounting firm located in the Eastern District of Missouri. The defendant, who was a partner at Firm A, provided forensic litigation services and tax preparation services to Firm A's clients.

During the regular course of business, Firm A would issue retainer refund checks to clients. The checks were issued using the firm's U.S. Bank account #0270.

During the time period covered by the Information, the defendant devised and executed a scheme to defraud and obtain money from Firm A by means of materially false and fraudulent pretenses, representations, and promises in the amount of $136,988.00 as follows:

a. It was part of the scheme that on one or more occasions, the defendant forged the signatures of Firm A clients on the back of retainer refund checks, which had been issued by Firm A, using Firm A's U.S. Bank account, account #0270. The defendant fraudulently deposited these checks into the defendant's two U.S. Bank accounts, account #1379 and account #3579. The defendant fraudulently endorsed and deposited in his U.S. Bank accounts approximately twenty-two retainer refund checks, totaling $49,786.00.

b. It was further part of the scheme to defraud that, on one or more occasions, the defendant, while acting as a partner at Firm A, performed forensic litigation services and tax preparation services for clients but failed to turn over to Firm A, checks made payable to the defendant for those services, totaling approximately $87,202.00.

c. It was further part of the scheme that the defendant withdrew funds that he fraudulently obtained from Firm A's bank account.

Specifically, with respect to Count One of the Information, the Government would prove that on or about July 11, 2018, the defendant sent an email to "K.P.," another Firm A employee, using his Firm A email account. The defendant's email directed K.P. to issue a retainer refund check to "R.B.," a Firm A client.

On July 12, 2018, K.P. used his/her Firm A email account to send an email to two additional Firm A employees with instructions to issue the retainer refund check. That same day, refund check #6823 in the amount of $2,050.00, and made payable to R.B. on Firm A's U.S. Bank account #0270, was prepared by a Firm A employee and presented to the defendant for hand delivery to client R.B. The defendant forged the signature of R.B. on the back of check #6823 and added the additional endorsement, "Pay to Mike Morhaus…For Deposit Only" followed by the defendant's signature. Check #6823 was then deposited into the defendant's U.S. Bank account #1379 causing $2,050.00 to be transferred from Firm A's U.S. Bank account #0270 to the defendant's U.S. Bank account #1379.

The Government also would prove that Firm A's email is hosted by Microsoft 365. Microsoft data is stored on servers within the continental United States.

Therefore, by this agreement, the defendant acknowledges that for the purpose of executing the scheme to defraud, the defendant did knowingly transmit and cause to be transmitted by means of wire communications in and affecting interstate commerce, certain writings, signs, and signals, that is, emails using Firm A's server which caused funds to be transferred from Firm A's U.S. Bank account to the defendant's U.S. Bank accounts. This scheme resulted in Firm A suffering a loss of more than $95,000.00 but less than $150,000.00.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. Pursuant to the parties' negotiated plea agreement, the parties have agreed to make a non-binding recommendation that this Court impose a three-level downward variance from the Total Offense Level at the time of sentencing. Notwithstanding that recommendation, the parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions:

**a. <u>Chapter 2 Offense Conduct</u>:**

**(1) <u>Base Offense Level</u>:** The parties agree that the **Base Offense Level is 7,** as found in Section 2B1.1(a)(1)(B) because the offense of conviction has a statutory maximum term of imprisonment is 20 years.

**(2) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply:

(i) **8 levels should be added** pursuant to Section 2B1.1(b)(1)(E) because the amount of loss was more than $95,000.00 but less than $150,000.00; and

(ii) **2 levels should be added** pursuant to Section 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims.

**b. <u>Chapter 3 Adjustments</u>: 2 levels should be added** pursuant to Section 3B1.3 because the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission of concealment of the offense.

**<u>(1) Acceptance of Responsibility:</u>** The parties agree that **three levels should be deducted** pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s)/Disputed Adjustments:** None.

**d. Estimated Total Offense Level:** The parties estimate that the **Total Offense Level is 16**.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. <u>Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies</u>:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. <u>Supervised Release</u>:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. <u>Mandatory Special Assessment</u>:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. <u>Possibility of Detention</u>:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. <u>Fines, Restitution and Costs of Incarceration and Supervision</u>:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration

and costs of supervision. The defendant agrees to pay restitution in the amount of $118,613.00 to Firm A. The total restitution figure accounts for payments/reimbursements in the amount of $18,375.00 that the defendant made to Firm A clients. The defendant further agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the information.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

4/22/2021
Date

Jennifer J. Roy #47203MO
Assistant United States Attorney

4/22/2021
Date

Michael D. Morhaus
Defendant

4/22/2021
Date

William S. Margulis
Attorney for Defendant